[No. 6524. Decided January 5, 1909.]

The State of Washington, *on the Relation of Cascade Railroad Company et al., Plaintiff*, v. The Superior Court for Skamania County *et al., Respondents.*[1]

Commerce—Monopolies—Railroads—Competing Parallel Lines—Agreement to Build New Road—Restraint of Trade. The constitutional and statutory prohibitions against the consolidation of parallel and competing transportation lines are not violated by an arrangement between two railroad companies operating competing lines between Spokane and Seattle, Washington, whereby each subscribed for one-half of the capital stock of a new and distinct railroad corporation and contributed one-half of the cost of constructing a new railroad from Spokane to Portland, Oregon, opening up and serving new territory, each road continuing its individual identity and control.

Eminent Domain—Parties Entitled—Subscription of Stock—Validity—Trustee for Other Railroads. A subscription to the capital stock of a railroad corporation by a trustee in behalf of two other railroad companies, each of which was the owner of the beneficial interest in one-half of such stock, is sufficient to confer upon the new corporation the right of eminent domain, where the new company was to serve new territory.

[1]Reported in 98 Pac. 739.

Certiorari to review a judgment of the superior court for Skamania county, McCredie, J., entered October 4, 1906, adjudging a public use, in condemnation proceedings for a railroad right of way, after a trial before the court.    Affirmed.

*W. W. Cotton, Arthur C. Spencer,* and *Ralph E. Moody,* for relator.   In construing anti-trust statutes, the nature of the business contemplated by the contract, and the tendency of the contract as affecting the public, rather than the parties to the contract, whether corporations or individuals, are to be considered in determining whether it violates public policy. *Yazoo & M. V. R. Co. v. Searles,* 85 Miss. 520, 37 South. 939, 68 L. R. A. 715; *Earle v. Seattle etc. R. Co.,* 56 Fed. 909; *Northern Securities Co. v. United States,* 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679; *Phillips v. Iola Portland Cement,* 125 Fed. 593.   The phrase "a parallel or competing line," includes a projected but not wholly constructed road, if such road when completed and in operation will actually compete with the road seeking control before completion.   Noyes, Interstate Corporations, § 37, p. 64; *Pennsylvania R. Co. v. Commonwealth* (Pa. St.), 7 Atl. 368; *Illinois State Trust Co. v. St. Louis etc. R. Co.,* 208 Ill. 419, 70 N. E. 357.   The respondent railroad was organized in a manner and for a purpose prohibited by the constitution and laws of the state of Washington and Congress, and is void *ab initio,* and therefore, no proceeding can be maintained by the respondent, particularly for the purpose of carrying out the purpose of its wrongful existence. *Illinois State Trust Co. v. St. Louis etc. R. Co., supra; East St. Louis Connecting R. Co. v. Jarvis,* 92 Fed. 735; *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679; *Brown v. Estate of Dibble,* 65 Mich. 520; *Ford v. Chicago Milk Shippers' Ass'n,* 155 Ill. 166, 39 N. E. 651, 27 L. R. A. 298; *State ex rel. Morrell v. Superior Court,* 33 Wash. 542, 74 Pac. 686.

*Carey & Kerr,* for respondents.

CROW, J.—In June, 1906, the Portland & Seattle Railway Company, a corporation, filed its petition in the superior court of Skamania county, against the Cascade Railroad Company, a corporation, New York Trust Company, a corporation, and the Oregon Railroad & Navigation Company, a corporation, and others, as defendants, to condemn and appropriate a right of way over certain real estate. After the entry of the preliminary decree adjudging a public use, the above-named defendants, as relators, applied to this court for a writ of certiorari, and the writ having been issued, the decree is now before us for review.

On the preliminary hearing, the superior court found that the Portland & Seattle Railway Company was ,a duly organized corporation, that its capital stock had been regularly subscribed, that it possessed the power of eminent domain, and that the attempted use for which it sought to appropriate the land was public. From the evidence it appears that 49,995 of the 50,000 shares of capital stock of the Portland & Seattle Railway Company were subscribed by C. M. Levey, trustee; that he was president of the company; that he had been instructed to have the company incorporated and to subscribe for the stock as an enterprise in which the Northern Pacific Railway Company and the Great Northern Railway Company were to become jointly interested as stockholders; that he received such instructions from the president of the Northern Pacific Railway Company, of which company Levey himself was third vice president; that the Northern Pacific Railway Company is a Wisconsin corporation, while the Great Northern Railway Company is a Minnesota corporation; that the Northern Pacific Railway Company and the Great Northern Railway Company were the beneficial owners of the 49,995 shares of stock so subscribed by C. M. Levey, trustee, each owning one-half thereof; and that the Northern Pacific Railway Company and the Great Northern Railway Company contributed the necessary funds for the construction of the Portland & Seattle

Railway Company, under a construction contract into which it had entered with contractors Seims & Shields.

The relators, citing §§ 14, 16, and 22, of art. 12 of our state constitution, and the act of Congress of July 2, 1890, entitled: "An act to promote trade and commerce against unlawful restraints and monopolies" (26 Stats. at Large, 209), commonly known as the 'Anti-Trust Act'," contend that, by the organization and construction of the Portland & Seattle Railway Company in the manner above mentioned, that company, the Northern Pacific Railway Company, and the Great Northern Railway Company have violated the above mentioned sections of the constitution of the state, and also the anti-trust law, and that the Portland & Seattle Railway Company should not be permitted to proceed with the condemnation proceedings, the subscription to its capital stock being unlawful.

It is admitted by the respondents that the Northern Pacific Railway Company owns and operates a line of railway from Spokane to Seattle, that the Great Northern Railway Company owns and operates a line of railway between the same points, that those two companies were instrumental in causing the respondent road to be incorporated, and that each of them owns one-half of its capital stock; but the respondents contend that these facts do not amount to a consolidation of the Northern Pacific Railway Company and the Great Northern Railway Company, and we think this contention should be sustained. It is not disputed but that the respective officers of the Northern Pacific Railway Company and the Great Northern Railway Company remain the same as before the organization of the Portland & Seattle Railway Company. Each corporation is unhampered by the other in the matter of the transaction of its business, the making of rates, and the transporting of freight and passengers over its own line as heretofore. The two original companies remain intact and are conducted as separate and distinct corporations entirely independent, the one from the other. The

mere fact that they each have subscribed for and own stock in the respondent road, which is a new and distinct entity, does not merge or consolidate them in violation of the state constitution or the anti-trust law.

The constitutional and statutory prohibitions against the consolidation of parallel and competing transportation lines are founded upon principles of public policy, the intention being to preserve to the public existing facilities offered by competing companies, so that their efficiency shall not be impaired by bringing them under a common ownership and control. It is difficult to understand how · transportation facilities can be impaired when two existing separate and independent corporations, each of which continues its individual identity, organization, and control, subscribe for the capital stock of a newly created corporation and thereby aid in building a railroad which opens and serves additional territory. It would appear that the creation of the new corporation, instead of curtailing the transportation facilities already enjoyed by the public, would increase the same.

The relators, in support of their contention that an illegal combination has been formed, cite *Northern Securities Co. v. United States*, 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679. In that case, however, the court held that it was illegal for the Northern Securities Company, a new corporation, to acquire and control the stock of both the Northern Pacific and Great Northern railway companies, which at the time were operating separate lines held to be parallel and competing. The ground upon which the decision rested was that the effect of the stock ownership by the Securities Company would be to stifle the competition which had theretofore existed between the two railroad companies.

The question before the trial court was whether the capital stock of the respondent company had been subscribed in compliance with Bal. Code, § 4250 (P. C. § 7053), so that it might be entitled to exercise the right of eminent domain. The trial court found that such subscription had been legally made,

and in so doing it committed no error. The judgment is affirmed.

HADLEY, C. J., FULLERTON, and MOUNT, JJ., concur.

RUDKIN and CHADWICK, JJ., took no part.